SHEFFIELD et al. v. FRANKLIN et al.—

222 S. W. (2d) 974.

Western Section.   October 10, 1947.

Petition for Certiorari denied by Supreme Court, February 28, 1948.

W. H. Sloan and P. M. Harbert, both of Savannah, for appellants.

R. R. Haggard, of Waynesboro, and Edwin DeFord, of Savannah, for appellees.

ANDERSON, P. J. The bill was filed on November 23, 1942, to sell the land therein described for partition.

The Chancellor granted the relief sought and the defendants appealed.

The sole question presented is whether the complainants have the requisite title to the land which they ask to be sold for partition. The defendants' contention that they have not, rests upon the single proposition that the conveyance under which complainants claim title was void for uncertainty in the description of the land; or, otherwise stated, that by reason of the insufficiency of the description of the land the conveyance was inadequate to vest the legal title in the grantee under whom the complainants claim.

For present purposes we may take the premise of the defendants' position to be sound. This is, that it was a prerequisite to the relief sought that the complainants show that they were the joint owners with the defendants in a legal right to the land sought to be sold. Hopkins v. Toel's Heirs, 23 Tenn. 46; see also, Glascock v. Tate, 107 Tenn. 486, 64 S. W. 715.

The bill charges that J. R. Ford died intestate about 30 years prior to the filing of the bill; that the complainants are his children; that the intestate had eleven other children; that all of them except the three complainants had conveyed their interest in the land in question to the defendants; that at the time of his death the said J. R. Ford was seized and possessed of certain land situated in the 9th Civil District of Hardin County, Tennessee, which tract of land was conveyed to him by W. J. Bird in the year 1897 and said land was bounded and described as follows: "On the waters of Whites Creek Range 12, Section 15, beginning on a leaning white oak and spanish oak pointers thence south 193 poles to a post oak and hickory pointers thence west 190 poles to

a stake thence north 125 more or less poles to a red oak and pine pointers thence eastward with the conditional line to the old line thence northward with the conditional line to a white oak and whiteoak and blackgum pointers thence east 2 poles to a maple and poplar and maple pointers, thence south with the creek to the line, thence east with the line to the beginning containing 250 acres, more or less."

There is filed as an exhibit "A" to the bill a copy of a deed purporting to have been executed by W. J. Bird and Martha Bird, dated February 22, 1897, conveying to J. R. Ford "a certain tract of land," the description of which is the same as that above quoted, with the exception that there is no reference to the Civil District of Hardin County in which the land lies.

The defendants, Oscar Franklin and wife, filed an answer in which they deny that J. R. Ford was the owner of the lands described in the bill at the time of his death and aver that the same was owned by George Ford, father of the defendant, Alma Franklin, and that the defendant, Oscar Franklin, had purchased the interest of the heirs of George Ford and thus became the owner of the entire property. This position is not bottomed upon any alleged insufficiency of the description of the land in the conveyance under which the complainants claimed, but solely upon the following averment: "That although J. R. Ford, known as John Ford, actually purchased the land in question, that his son G. W., known as George Ford, actually paid for said land individually, and while he lived assumed complete control of the land, paid the taxes assessed against the same and was in truth and fact the actual owner thereof, which was well known by all concerned and no questions as to his ownership was ever made by any persons".

The cause was heard at the October Term, 1943, and the result was a decree "that the title to said land is vested in the heirs of J. R. Ford and their successors in title by descent and transfer, and that the following be decreed to be the lawful owners: that each of the three complainants own a one-seventh undivided interest in said land, that Grace Ford Cummings is the owner of a one-seventh undivided interest in said land, that John Fowler, Mary Fowler and George Fowler together own a one-seventh undivided interest, they taking the share of their deceased mother, and that Oscar Franklin and Alma Franklin are the owners of a two-seventh undivided interest, they taking the share of G. A. Ford, both by descent and purchase, and the share of J. L. Ford by conveyance of J. L. Ford to them."

The Chancellor further decreed that the land could not be partitioned in kind and was to the manifest interest of all the parties that it should be sold for partition, but that no sale of the same should be had until after the reference therein ordered had been executed. The reference was for the purpose of determining the value of improvements placed on the property by the defendants, taxes paid by them, the value of the timber they had taken from the land, and the value of the rents and profits "that have accrued to said Oscar Franklin and Alma Franklin since they had been occupying the land and receiving the rents and profits."

The trial which resulted in the foregoing decree was on oral evidence, none of which was preserved by bill of exceptions so far as the transcript before us discloses.

The cause stood upon the order of reference until the master's report was filed on May 29, 1945. On May

1, 1947, the defendants filed a written motion to dismiss the bill upon the following grounds:

"1. Because the Court has no jurisdiction to grant the relief sought by complainant's bill, the bill shows that the Court is without jurisdiction, there being no land described in complainant's bill with which the Court could deal or against which any decree in this cause would be effective.

"2. Because the Court is without jurisdiction in this cause, the deed to J. R. Ford, through whom complainants claim and filed as 'Exhibit A' to complainant's bill, is void for want of a description of the lands intended to be conveyed.

"3. Because the Court is without jurisdiction under the facts alleged in the bill, there being no land or rem; the complainants and defendants could not be tenants in common in property not in existence, and no decree would be effective in this cause. The Court is without jurisdiction to grant the relief sought because no decree rendered in this cause could be enforced."

The questions presented by this motion had not theretofore been raised in the case by demurrer or otherwise. In this connection it is perhaps proper to say that the solicitor who filed the motion on behalf of the defendants and who is representing them on the present appeal seems to have just entered the case at the time the motion was filed.

The foregoing motion was duly presented and overruled by the Chancellor, who held that the land in controversy could be surveyed and located by the description contained in the deed filed as Exhibit A to the bill. Whereupon the cause was further heard upon the entire record when the Chancellor, after sustaining certain

exceptions to the report of the clerk and master, modified and confirmed the report and ordered that the land be sold for partition. It was from this decree that the defendants, Oscar Franklin and Alma Franklin, prayed and were granted an appeal to this court.

The brief in support of the assignments of error asserted: "We rely upon the sole and simple question that J. R. Ford through whom the complainants claim, had no title to any land. There is no land about which the court could adjudicate in this cause." It is asserted that the applicable rule "requires that certainty of description which will enable one to take the deed and from its face designate the property described". The gist of defendants' argument as stated in the brief is as follows: "If this be sound as a proposition of law, and a surveyor were to take the deed filed as Exhibit A to complainants' bill and undertake to survey this land he would not know to what point to go and he could not tell from the deed where to begin his survey or where to find any point called for in this deed. He might go into Hardin County, and out on Whites Creek somewhere on the waters of it, and if he could find range 12 and section 15, an area of six miles, as we have heretofore shown, and could start on any leaning white oak and spanish oak pointer, he could find, and run south to any post oak and hickory pointers he could find, then west 190 poles to a stake, if he could find one, north to a red oak and pine pointers, if he could find one, and so on around in accordance with this deed and he never would know whether he had surveyed the land which W. J. Bird undertook to convey to J. R. Ford."

The complainants contend that the defendants are estopped on several grounds to question the sufficiency of

the description for title to pass by the deed; but a disposition of the questions presented by this contention as well as the question of whether the interlocutory decree was res judicata will be pretermitted, for in the particular circumstances we prefer to squarely meet the defendants' contention and rest our decision upon the single point raised by them.

The defendants rely chiefly upon the case of Ragsdale v. McFall, 145 Tenn. 684, 237 S. W. 66, which they confidently assert is conclusive in their favor. That was an ejectment suit in which the defendants disclaimed title to any portion of the land sought to be recovered except two small tracts which they claimed by deed. The complainant's record title was not disputed, but the defendants pleaded the statute of limitations, relying upon the fact that they were in actual possession of the two tracts of land, claiming adversely, under the deed referred to, for more than seven years. The determinative question was whether the deed of the defendants sufficiently described the land so as to identify it as being the land claimed and as including within the boundaries the defendants' improvements.

The description of the two tracts in the deed was as follows:

"In the Fifth civil district of said Wayne county on the waters of Second creek and bounded as follows to-wit:

"Beginning at the southeast corner at a stake and running east sixty poles to the corner on a Spanish oak; thence north one hundred and fifty-two poles to a black oak; thence west sixty poles to a Spanish oak; thence south one hundred and fifty-two poles to the beginning. One other tract beginning at a black oak on the southeast

corner; running west one hundred and eighty poles to a stake with chestnut oak pointers; thence north ninety-four poles to a rock corner; east one hundred eighty poles to a beech tree; thence south ninety-four poles to the beginning, containing by estimation one hundred and fifty-two acres to be the same more or less. Said land is bounded on the north by Budd Johnson and M. A. McFall''.

As to the first tract, the deed was held to be void for uncertainty of description of the land; but as to the second tract the description was held sufficient. With respect to the first tract, after pointing out the impossibility of the call beginning at the southeast corner and running east therefrom, and stating that this could be treated as a clerical error and the language interpreted as if it called for 60 poles from the southwest corner and that the Spanish oak was the southeast corner, the court continues:

''There is nothing whatever to indicate where either one of these corners is located, further than that the land itself is in the Fifth civil district of Wayne county on the waters of Second creek. It would be impossible to locate the land without referring to evidence not afforded by the description itself. The land which defendants claim is the first tract in this deed adjoins the second tract, and has for its northeast corner the southeast corner thereof. But there is nothing in the deed to identify it. The deed does not afford any description of the trees called for as corners or any information that would lead to the location of the trees. It is true that there are marked lines and trees standing on the ground where the defendants claim their corners and lines are lo-

cated, but this is insufficient unless there is something in the deed that will lead to the location of these lines.

"The rule of law is that parol evidence is admissible to show where the land is that fills the description given in the writing, but it cannot supply material parts of the deed. It is permissible to apply, but not to supply, description. It is not permissible to show that the parties intended to designate a particular tract by the description when the description may be applied to several different tracts. The rule requires that certainty of description which will enable one to take the deed and from its fact designate the property described. See authorities cited in Shannon's Code, pp. 2278 to 2286.

"There is nothing whatever in this description to identify the land as being that claimed by the defendants, except the calls for trees, and nothing to lead us to the location of the trees called for. The land might as well have been surveyed and located in any other place where trees such as are called for might be found. The land could not be found without calling for information not referred to or disclosed in the deed."

The description before us contains two important particulars which we think serve to distinguish it from that held insufficient in the case just referred to. These are, the reference to appropriate pointers and the fact that one of the boundary lines is described as running south with the creek.

The determinative character of the distinction, we think, is demonstrated by the detailed analysis in the complainants' brief of the calls in question. This is as follows:

"The deed begins.'I, W. J. Bird, of the State of Tennessee Hardin County have this day bargained and sold

and do by these presents convey unto J. R. Ford a certain tract of land for the sum of One Hundred Dollars paid in hand and being in the County and State above Mentioned'. That places the land in Hardin County, Tennessee. The deed continues, Lying on the waters of Whites Creek Range 12, section 15.

" 'Beginning at a leaning whiteoak and Spanish oak pointers.' It is insisted that there is nothing to describe this corner or its location. A leaning white oak sets this tree apart from just any white oak and being close enough to a Spanish oak tree that the surveyor could reach and hack the same in the same track from which he marks the corner further helps to identify this corner; 'thence south 193 poles to a post oak and hickory pointer' the surveyor from the beginning corner runs then south 193 poles to find a post oak and hickory pointer the hickory pointer being close enough to hack from the post oak. 'thence west 190 poles to a stake.' No natural monument is shown there but the preceding and succeeding calls are sufficient to aid in locating the stake. 'thence north 125 poles more or less to a red oak and pine pointers' we have here the corner a red oak near the pine. Incidentally pointers are used to help distinguish one red oak corner from another red oak corner and you do not walk around or away from the corner to mark a pointer. 'Thence eastward with conditional line to old line.' This is, of course, the most indefinite line called for but it can be aided by the preceding and succeeding calls. 'Thence northward with the conditional line to a white oak and blackgum pointers.' This calls for a white oak that is set apart from other white oaks by having a white oak and blackgum within arm and hatchet length of the first white oak. 'Thence East 2 poles to a maple and poplar

and maple pointers.' This line places six trees, two line trees or corner trees and four pointers within 33 feet of each other. 'Thence south with the creek to the line.' From the above at least three of the six trees last referred to must be on the bank of the creek, as the line runs from a maple with poplar and maple pointer, and runs 'south with the creek.' This is where appellants must have overlooked or they would have found 'A natural object' 'Thence east with the line to the beginning' containing 250 acres more or less.

"From the above there is a compelling deduction that the calls left the creek and ran east from the creek leaving the creek within the tract. This is correct as shown by the record."

In addition to the foregoing considerations, the fact that the number of acres conveyed is stated in the deed is significant, for the rule is that a call for quantity may sometimes be resorted to for the purpose of locating and identifying land. Phoenix Mutual Life Ins. Co. v. Kingston Bank & Trust Co., 172 Tenn. 335, 112 S. W. (2d) 381; Obion Valley Land & Investment Co. v. Southern General Life Co., 174 Tenn. 353, 125 S. W. (2d) 482; Dearing v. Brush Creek Coal Co., 182 Tenn. 302, 186 S. W. (2d) 329. Certainly it is true that a deed to be valid must designate the land intended to be conveyed with reasonable certainty. Phoenix Mutual Life Ins. Co. v. Bank, supra. But with respect to executed contracts conveying real property, the courts have been extremely liberal in construing the description with a view of determining whether it is sufficiently definite and certain to identify the land and make the instrument operative as a conveyance, and it is said to be a broad general principle "that a deed will not be declared void for

uncertainty in description if it is possible by any reasonable rules of construction to ascertain from the description, aided by extrinsic evidence, what property is intended to be conveyed". 16 Am. Jur. 585; see also, 8 Am. Jur. 812, sec. 94. "It is sufficient", continues this text, "if the description in the deed or conveyance furnishes a means of identification of the land or by which the property conveyed can be located". Ibid.

The test is whether a surveyor with the deed before him and with or without the aid of extrinsic evidence can locate the land and establish the boundaries. Ibid.

Though parol evidence cannot be resorted to to supply material parts of a deed, it is always admissible to show where the land is that fills the description contained in the instrument. Ragsdale v. McFall, supra. It is permissible to apply, but not to supply, description. Ibid. And it is very generally held that 'parol evidence is permissible to locate natural monuments, such as trees, paths, fords, etc., called for in the deed." 16 Am. Jur. 678.

Thus, where a deed gave the point of beginning as "at a pine on the east side of Gum Swamp", it was held sufficiently definite to render parol evidence permissible to locate it. Broadwell v. Morgan, 142 N. C. 475, 55 S. E. 340.

The subject of the sufficiency of a description of land challenged by a plea of the statute of frauds is considered at length in Wilson v. Calhoun, 157 Tenn. 667, 11 S. W. (2d) 906. The principle there dealt with is no less applicable here. In that case, after observing that parol evidence to point out or designate the property described in the writing, in no way contradicts or varies the writing and the general exception admitting

parol evidence in such cases applies, the court approved the rule as stated by the Supreme Court of the United States in the leading case of Ryan v. U. S., 136 U. S. 68, 10 S. Ct. 913, 34 L. Ed. 447, as follows [157 Tenn. 667, 11 S. W. (2d) 908]: ''The degree of certainty with which the premises must be denoted is defined in many books, and the cases are extremely numerous in which the subject has been illustrated. They are not all harmonious. But they agree in this, that it is not essential that the description have such particulars and tokens of identification as to render a resort to extrinsic aid entirely needless when the writing comes to be applied to the subject-matter. The terms may be abstract and of a general nature, but they must be sufficient to fit and comprehend the property which is the subject of the transaction; so that with the assistance of external evidence, the description, without being contradicted or added to, can be connected with and applied to the very property intended, and to the exclusion of all other property.''

Following this quotation, the court added: ''And in accord with the pertinent maxim, 'That is certain which may be rendered certain', it is significant that the United States Supreme Court said in Wilson v. Boyce, 92 U. S. [320] 325, 23 L. Ed. [608] 610, 'the generality of its language forms no objection to the validity of the mortgage. A deed ''of all my estate'' is sufficient. So a deed ''of all my lands wherever situated'' is good to pass title.' ''

The conclusion was that a specific description by boundaries of a tract of land was good under the statute of frauds notwithstanding the instrument failed to give the state and county in which the land was located. This

conclusion was grounded upon the fact that the description given furnished a basis for extrinsic proof by means of which the description would be applied to a particular tract.

Under the rule announced by the foregoing authorities, we think the description before us was sufficient. Paraphrasing the language quoted in Wilson v. Calhoun, supra, 157 Tenn. at page 671, 11 S. W. (2d) 908, the deed itself shows that some particular tract of land was intended and hence it was permissible to resort to parol evidence to show the location and boundaries of the tract mentioned and to enable the court to find it. Cf., Dearing v. Brush Creek Coal Company, 182 Tenn. 302, 312, 186 S. W. (2d) 329.

In the instant case the boundaries are supplied and it was necessary only for the Chancellor to supply by parol the location.

██ It is true that where the description is one that must necessarily apply with equal exactness to any one of an indefinite number of tracts, parol evidence is not admissible to show that the parties intended to designate a particular tract. But there is no such showing in the present case. Here, the possibility that the description would fit more than one tract of land lying in Hardin County, Tennessee, "on the waters of Whites Creek range 12 section 15", is purely speculative and so remote as to be of no practical consequence.

██ In fact, we think the matter was conclusively settled by the decree adjudicating the title to the land described in the bill. In the absence of demurrer or other seasonably filed pleading challenging them, the averments of the bill were sufficient to furnish the foundation for evidence as to the identity and ownership of

the property which the decree ordered sold for partition. See, Elk Valley Coal & Iron Co. v. Douglass, Tenn. Ch. App., 48 S. W. 365. As above pointed out, the decree adjudicating the title was rendered following a trial upon the oral evidence. This evidence was not preserved by a bill of exceptions. There is therefore a conclusive presumption that it was sufficient to apply the description to a particular tract of land and enable the Chancellor to determine in whom the title was vested and order a sale. Morrell v. Fire Ins. Co., 168 Tenn. 137, 76 S. W. (2d) 317; Williams v. Cantrell, 22 Tenn. App. 443, 124 S. W. (2d) 29; Fite v. Gassaway, 27 Tenn. App. 692, 184 S. W. (2d) 564.

In conclusion we think this further observation justified: It will be seen from the defendants' argument hereinabove quoted that their position is essentially based upon the assumption that the applicable rule "requires that certainty of description which will enable one to take the deed and from its face designate the property described". We think this is a misconception. Taken literally, it would confine the effort to locate the land to the deed alone and ignore the complementary rule that parol evidence may be resorted to for that purpose It is true that the statement in the brief is a precise quotation from the opinion in Ragsdale v. McFall, supra, but it is not permissible to isolate the statement from the context. Just preceding that expression, the court had said this: "The rule of law is that parol evidence is admissible to show where the land is that fills the description given in the writing, but it cannot supply material parts of the deed. It is permissible to apply, but not to supply, description." See Wilson v. Calhoun, supra.

The result is that the decree of the Chancellor is affirmed at the cost of the defendants, Oscar Franklin and Alma Franklin, and their sureties, and the cause remanded to the lower court for further proceedings.

Baptist and Hamner, JJ., concur.