IN THE COURT OF APPEALS OF TENNESSEE
AT NASHVILLE
May 7, 2002 Session

## WILLIAM J. REINHART and JUDITH F. REINHART,
### v.
## ROBERT T. KNIGHT, GLENDA KNIGHT, BOB PARKS and JOHN E. HARNEY, III,

**Appeal from the Rutherford County Circuit Court for County**
**No. 41560      James L. Weatherford**

---

**No. M2001-02195-COA-R3-CV - Filed December 4, 2003**

---

This appeal involves claims of breach of contract for sale of real estate and procurement of breach of contract. After a jury trial, the defendants Robert and Glenda Knight were found to have breached the real estate sales contract with the plaintiffs and plaintiffs were awarded $185,476.48. The jury also found that the defendants Bob Parks and John Harney procured the breach of contract by the Knight defendants and awarded plaintiffs $556,429.44. The trial judge remitted the damage award against the Knights to $0.00.

For the reasons set forth below, we reverse the remittitur suggested by the trial court and reinstate the jury verdict of $185,476.48 against the Knights. We affirm the judgment in all other respects and remand this matter for such further proceedings as may be consistent with this opinion.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court is hereby reversed as to remittitur, jury verdict reinstated, and affirmed in all other respects.**

THOMAS W. BROTHERS, SP. J., delivered the opinion of the court, in which D. MICHAEL SWINEY, J., joined. BEN H. CANTRELL, P.J., M.S., filed a dissenting opinion.

Bradley A. Maclean, Stephen H. Price, and Paul E. Helton, Nashville, Tennessee, for the appellants, Robert T. Knight, Glenda Knight, Bob Parks and John E, Harney, III.

J. Stanley Rogers and Christina Henley Duncan, Manchester, Tennessee, for the appellees, William J. Reinhart and Judith F. Reinhart.

# OPINION

In early 1996, defendant John E. Harney, III ("Harney") approached plaintiffs William and Judith Reinhart ("Reinharts") concerning the possible sale of their property in Rutherford County. The Reinharts entered into a written real estate sales contract with the defendants Robert and Glenda Knight ("Knights") on or about April 8, 1996. The Reinharts initially did not know that Mrs. Knight and Harney both worked for the same company, Bob Parks Realty. The parties signed a Facilitation agreement which stated that Harney was not the agent of either party.

Pursuant to this agreement the Reinharts were to convey a portion of their 115 acre tract of farmland to the Knights. The real estate to be conveyed was described as:

> *Approximately 92.8 acres located at 6429 Manchester Highway, further described in Deed Book 311, Page 331 in Rutherford County Register's Office. See attached Exhibit A.*

Exhibit A was never introduced into evidence. The Reinharts have moved to strike from the appellate record the purported copies of exhibit A that have been attached to the appellate briefs. The Reinharts argue that since the jury never received exhibit A as evidence, it should not be considered on appeal. We agree and grant the Motion to Strike.

The only other reference to the property description was contained in the consideration clause which stated:

> *...Actual purchase price to be based on $4700.00 (Forty Seven Hundred and 00/100 Dollars) per acre from accurate survey to be provided by Seller upon Buyers giving notice of contingencies, except for approval of survey, being removed...If sales price after survey of acreage is completed is below $425,000.00 (Four Hundred Twenty Five Thousand and 00/1000 Dollars), Buyer or Seller shall have the right to nullify the Contract and all earnest money shall be returned to the Buyer.*

Therefore if the survey provided revealed that there were less than 90.43 acres ($425,000/$4,700), either party had the option to terminate the agreement. The Knights never removed the contingencies and no survey was submitted to them.

The contract also provided for a 120-day feasibility period in which the Knights had access to the property to conduct soil testing in order to determine the percolation rates. This provision stated that:

> *Contract contingent on buyer's obtaining health department approvals for a maximum of 30 (3 bedroom septic system) sites distributed across the property in a manner satisfactory to the buyer's subdivision plan.*

The initial feasibility period was extended until October 30, 1996. Percolation tests were performed on a portion of the property indicating that the property could only be subdivided into

a maximum of 14-19 lots. This was unacceptable to the Knights who advised the Reinharts on November 1, 1996 that they did not want to purchase the property.

The Reinharts encountered financial difficulties and sold 87.34 acres of their property at auction on December 14, 1996. The acreage was determined by a survey conducted prior to the auction sale. Harney, Bob Parks ("Parks") and Gary Bowman purchased the property at auction for $303,000.00. At trial Mr. Reinhart testified that the land sold at auction was basically the land intended for the Knights but that he would have provided additional acreage from the area he retained if needed to provide the minimum acreage.

Harney, Parks and Gary Bowman formed a limited liability company that developed the land into a development known as Churchhill Farms, LLC. The development consisted of 16 tracts on which 14 residences were constructed. The total sales price for the land after development was $1,018,700.00.

The Reinharts sued the Knights for breach of contract and sued Parks and Harney for procurement of the breach of contract. The jury found that the Knights were liable for damages from their breach of the contract in the amount of $185,476.48. The jury also found that Parks and Harney were liable for treble damages for their procurement of breach of the contract and awarded damages in the amount of $556,429.44.

The trial court remitted the entire amount of damages awarded against the Knights, concluding that the jury could "have found under these circumstances that the Knight Defendants would not be liable to the plaintiffs in damages." The Reinharts accepted the remittitur under protest.

All parties now appeal. Harney and Parks assert on appeal that they could not be liable for procurement of breach of contract because (1) there were no damages awarded for the underlying breach of contract pursuant to the remittitur and (2) the Reinharts could not convey the minimum acreage required thereby allowing the Knights the right to nullify the contract. The Knights assert that the trial court's ruling on remittitur be interpreted to absolve them of any finding of breach of contract since the special verdict form was not proper. The Reinharts appeal from the remittitur and seek reinstatement of the jury award.

We find that the Reinharts' position is persuasive. The findings by a jury should be set aside only if there is no material evidence to support the verdict. We find there is material evidence to support the verdict and the award of damages.

The review of a trial judge's suggestion of remittitur is *de novo* upon the record of the trial court, accompanied by a presumption of the correctness of the finding, unless the preponderance of the evidence is otherwise. **See, Tenn.Code Ann. § 20-10-102(b)** We must determine whether the trial judge's action in decreasing the jury's award was justified, after giving due credit to the jury's decision on the credibility of the witnesses and to the role of the trial judge as the thirteenth juror. **See, Foster v. Amcon Intern., Inc., 621 S.W.2d 142 (Tenn. 1981)**

This Court has previously noted that "Appellate courts customarily conduct a three-step review of a trial court's adjustment of a jury's damage award. First, we examine the reasons for the trial court's action since adjustments are proper only when the court disagrees with the amount of the verdict. Burlison v. Rose, 701 S.W.2d at 611. Second, we examine the amount of the suggested adjustment since adjustments that "totally destroy" the jury's verdict are impermissible. Foster v. Amcon Int'l, Inc., 621 S.W.2d at 148; Guess v. Maury, 726 S.W.2d 906,

913 (Tenn.Ct.App.1986). Third, we review the proof of damages to determine whether the evidence preponderates against the trial court's adjustment. See Tenn.Code Ann. § 20-10-102(b)." **See, Long v. Mattingly 797 S.W.2d 889, 896 (Tenn.Ct.App.1990)**

Here, the trial judge stated as his reason for suggesting a remittitur that :

> *...I have concluded that the verdict form that was submitted to the jury and agreed upon by all parties was not proper.*
> *I am not satisfied with that part of the judgment that awards judgment against Robert T. Knight and wife, Glenda Knight.*
> *I feel that the jury should have been instructed that a person's liability in violation of T.C.A §47-50-109 for inducing the breach of contract is separate and distinct from the plaintiff's right of recovery in contact [sic] against the breaching party.*
> *...I feel that if the jury had been properly instructed, it was within the realm of possibility that the jury could have found that the Defendants, Knight, could have breached the contract and could have found that the Plaintiffs were damaged because of the breach, and could have found under the circumstances of this case, that the Defendants, Knight, would not be liable to the Plaintiffs in damages.*

Clearly the reason given for remitting the award of damages was that the jury instructions concerning breach of contract and procurement of breach were improper.

We must respectfully disagree. The Special Verdict Form which was submitted to the jury was developed by and approved by all counsel. The Court reviewed the questions with counsel prior to reading it to the jury before the jury retired. All counsel, including counsel for defendants, Knight, agreed to the Special Verdict Form. No party made any objection, request for withdrawal or request for restatement of any issue. In **Williams v. Van Hersh, 578 S.W. 2d 373, 376 (Tenn. App. 1978)** it was stated:

> *Absent an obvious miscarriage of justice, or situations of extreme hardship or of extraordinary and compelling circumstances, we hold that a party may not acquiesce in the special issues submitted by the court and then, after a verdict unfavorable to him, object to a particular question as submitted.*

Because this case does not involve an obvious miscarriage of justice, a situation of extreme hardship or of extraordinary and compelling circumstances, this issue clearly should not be raised on appeal.

The findings of a jury should not be set aside based upon an improper jury instruction if the error did not or could not have played a material role in the jury's decision making process. **See, Grandstaff v. Hawks, 36 S.W.3d 482, 497 (Tenn. App. 2000)**. There is nothing in the record to indicate that the jury did not understand the jury instructions or Special Verdict Form. The trial court judge's determination that "it is within the realm of possibility that the jury could have found that the defendants (the Knights)...would not be liable to the plaintiffs in damages" if they were given proper instructions does not show that the error did or could have played a material role in the jury's decision making process.

The amount of the adjustment also supports our determination. The effect of the reduction suggested by the trial judge is to reduce the award by 100%. This extreme modification totally destroys the jury's verdict and is impermissible. **See, Foster v. Amcon Int'l, Inc., <u>supra</u>**

Finally, a review of the record reveals that the preponderance of the evidence supports the jury's finding that the Knights breached the contract and that Plaintiffs suffered damages in the amount awarded by the jury. The Knights reliance on their dissatisfaction with the percolation tests was not a valid excuse for their breach. The proof of damages at trial clearly supported the amount awarded.

Thus, having determined that the original jury award must be reinstated, we now turn to the issues raised by the defendants below. Our determination of the remittitur question resolves the issue raised by the Knights as well as the argument by Harney and Parks that they cannot be held liable for any amount if no damages are awarded against the breaching party.

Remaining are the questions:

1. Was the contract never breached because the buyer had the right to nullify the contract for failure of the express condition that the property contain at least a specified minimum amount of acreage?

2. Was it reversible error for the trial court to instruct the jury that a contract can be entirely or partly oral?

Both of these issues require an examination of the testimony offered at trial. Harney and Parks assert that the Parol Evidence Rule should have prohibited Mr. Reinhart from testifying that he would have been able to provide at least 90.43 acres by including acreage from the area he was retaining. They argue that he was contradicting the written contract by moving a boundary line. They complain that this testimony adds or contradicts terms to the written contract in violation of the Statute of Frauds.

The Reinharts contracted to sell "approximately 92.8 acres" of the 115 acres that they owned. The property was described in the contract by the street address and the Book and Page number of the Reinhart deed for the entire 115 acres. The contract provided that <u>if</u> the Knights removed the contingencies, then the Reinharts were to provide a survey. <u>If</u> the survey revealed that there were less than 90.43 acres, then either party had the <u>option</u> to "nullify" the agreement.

First, the Knights never removed the contingencies and never requested a survey. The Knights relied upon their dissatisfaction with the percolation tests as the basis for their refusal to perform under the contract. Therefore, no survey was provided to them and they never attempted to "nullify" the contract for non-compliance with the minimum acreage requirement.

Harney and Parks rely heavily upon Mr. Reinhart's testimony at trial to prove that it would have been impossible for him to convey at least 90.43 acres since the survey for the auction revealed only 87.34 acres in the tract intended to be sold to the Knights. Therefore, since it was impossible for the Reinharts to perform, there could not be a breach of contract by the Knights. They cite his testimony in support of their position:

> Q: *So you sold at absolute auction basically the land that you had sold to the Knights under the contract?*
> A: *Yes, exactly.*

Mr. Reinhart later testified somewhat differently:

> Q:    *Okay. As far as the contract, in the contract where it says -- let me ask you this: As far as the property, the property that Mr. Harney and Mr. Parks and Mr. Bowman bought, that was the same property you were going to sell the Knights; correct?*
>
> A:    *Not exactly.*
>
> Q:    *Why is it not exactly?*
>
> A:    *Because the line that was closing off the 15 acres that I decided to retain was not closed off during the Knight contract. It was closed off at the time I sold the property at auction.*
>
> Q:    *So, are you saying at auction they got a little bit more land , is that right, or a little less?*
>
> A:    *They got a little less.*

The Reinharts submit that it was permissible for Mr. Reinhart to explain at trial how he would have provided sufficient acreage by reducing the amount he retained.

Harney and Parks complain that this testimony violates the Parol Evidence Rule. We disagree.

If the agreement itself shows that some particular tract was intended, then parol proof is admissible to show the location and boundaries of the tract mentioned, and to enable the Court to find it. **See, Dobson v. Litton, 45 Tenn. (5 Cold.) 616 (1868)** The rule of law is that parol evidence is admissible to show where the land is that fills the description given in the writing, but it cannot supply material parts of the deed. It is permissible to apply, but not to supply, description. **See, Sheffield v. Franklin 222 S.W.2d 974 (Tenn. Ct. App. 1947)**

Here Mr. Reinhart was properly allowed to explain how he would perform within the terms of the contract. His testimony did not contradict the terms of the contract. Instead, he merely identified <u>where</u> the property was that was described in the contract. Parol testimony is always admissible to show where the land is that fills the description contained in the instrument. **Id.**

Under these circumstances, the jury instruction that a contract could be entirely or partly oral, although erroneous in a case involving the sale of real estate, was harmless error. There was no modification of the contract, only an explanation of performance.

Accordingly, we reverse the judgment of the trial court granting a remittitur and reinstate the jury's verdict of $185,476.48 against Robert and Glenda Knight. We affirm the judgment in all other respects. Costs shall be taxed against Robert and Glenda Knight, John Harney and Bob Parks, for which execution shall issue if necessary.

_____
JUDGE THOMAS W. BROTHERS